**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICKEY PUBIEN,<br><br>    Plaintiff,<br><br>    v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,<br><br>    Defendant. | Civil Action No. 18-172 (JEB) |

**MEMORANDUM OPINION**

For at least two years, *pro se* Plaintiff Mickey Pubien has been seeking information about the grand jury that indicted him. His most recent Freedom of Information Act request, from September 2017, sought the dates the grand jury was in session. The Executive Office for United States Attorneys, in conjunction with the United States Attorney's Office for the Southern District of Florida (USAO-SDFL), searched for responsive records and turned up a single document: a Memorandum that contained only the dates on which the grand jury was empaneled and discharged. EOUSA produced the Memo to Pubien, redacting only the names of the author and recipient. It now moves for summary judgment. Plaintiff opposes, contending primarily that the search was inadequate and the withholdings improper. Finding for the Government on both issues, the Court will grant Defendant's Motion for Summary Judgment.

**I.    Background**

The backdrop for this case begins in 2016, with a FOIA request not at issue here. On September 13 of that year, Pubien submitted to EOUSA a request seeking "the dates the grand jury was impaneled and expired." See ECF No. 9-2 (Declaration of Princina Stone), ¶¶ 5–9, 14,

1

15; see also Def. Mot., Exh. A (2016 FOIA Request) at 1.  In response to that request, EOUSA and USAO-SDFL contacted the United States District Court for the Southern District of Florida (USDC-SDFL) "to seek information responsive to Plaintiff's FOIA request," which the U.S. Attorney's Office no longer had because it would have "been purged in accordance with USAO-SDFL record retention schedule."  Stone Decl., ¶ 8; ECF No. 16-1 (Declaration of Francys Marcenaros), ¶ 9.  The USDC-SDFL Court Clerk provided the U.S. Attorney's Office with a one-page Memorandum specifying the dates the grand jury was impaneled and discharged.  See Stone Decl., ¶ 8.  EOUSA released the Memo, with redactions, to Plaintiff on July 20, 2017, two months before he submitted his next request — the one at issue here.  Id., ¶ 9.

On September 28, 2017, EOUSA received that FOIA request.  Id., ¶ 10.  It sought "the (exact dates) . . . grand jury [number 06-0403 (FL)] was in session for the month of December 2006."  ECF No. 9 (Def. MSJ), Exh. E (2017 FOIA Request) at 1.  The scope of the 2017 request was thus more targeted: rather than seeking only the beginning and end dates, Plaintiff seeks every date the grand jury was in session.

Even though this request technically sought information rather than records — and the Government is not required to answer questions or provide non-record information under FOIA, see Evans v. Federal Bureau of Prisons, 2018 WL 707427, at *3 (D.D.C. 2018) — EOUSA nonetheless renewed its search in response to that request.  Not surprisingly, the Government did not have the more specific information Pubien sought.  EOUSA — in conversation with USAO-SDFL — again determined that it would not have responsive records in its control; rather, any relevant material would be in the Court Clerk's office.  See Stone Decl., ¶ 16.  The USAO Grand Jury Clerk further explained that the Court Clerk had already indicated that the Memo previously provided "was the only information available" and that "[a]ny other information related to [the]

2

[g]rand [j]ury . . . no longer existed." Marcenaros Decl., ¶ 3. The Court Clerk confirmed that "[her office] would not know the specific dates on which that particular [g]rand [j]ury met," so that a search for in-session dates "yielded no records." Id. On June 6, 2018, Defendant sent Pubien a letter advising him that it had determined that his 2017 FOIA request duplicated his 2016 request. See Stone Decl., ¶ 17. It re-sent Pubien another copy of the Memo, id., again redacting pursuant to FOIA Exemptions 6 and 7(C) the names of USAO-SDFL and USDC-SDFL personnel appearing in its "To" and "From" lines. Id., ¶¶ 22–23, 25. EOUSA now moves for summary judgment.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

**III.    Analysis**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance

4

with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 754–55. "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Plaintiff contends that EOUSA erred in two essential respects. He maintains first that, for a variety of reasons, the search was inadequate. See ECF No. 14 (Pl. Opp.) at 3–6, 8, 9. He next argues that the Government's withholdings were improper. Id. at 10–11. The Court addresses each point in turn.

### A.    Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied

with FOIA. Id. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

To demonstrate the adequacy of its search here, Defendant offers two declarations: one from Princina Stone, an Attorney-Advisor with the FOIA staff at EOUSA; and another from Francys Marcenaros, a FOIA Paralegal Specialist for USAO-SDFL. See Stone Decl., ¶ 1; Marcenaros Decl., ¶ 1. They describe the steps EOUSA undertook in response. Marcenaros contacted USAO-SDFL's Grand Jury Clerk, who indicated that — as with the 2016 request — she "did not possess any information related to Plaintiff's FOIA request" because "the records that might have . . . related . . . had been purged in accordance with the [office's] record retention schedule." Marcenaros Decl., ¶¶ 9, 13. Any information regarding the grand-jury dates, moreover, would not have originated within USAO-SDFL but with the Court Clerk's office in the district court. See Stone Decl., ¶ 16. The Grand Jury Clerk also indicated that the Memo the Court Clerk had previously provided to the U.S. Attorney's Office containing the dates the grand jury "was empaneled and discharged was the only information available" and that "[a]ny other information related to [the] [g]rand [j]ury . . . no longer existed." Marcenaros Decl., ¶ 13. The Court Clerk confirmed that "[her office] would not know the specific dates on which that particular [g]rand [j]ury met." Id. Marcenaros also emailed the AUSAs who had been assigned to Pubien's criminal case. Both searched their records but determined that they did not have any responsive information; they indicated that any relevant document, if it existed, would be with the office's Grand Jury Clerk, who Mercenaros had already determined lacked any responsive information. Id., ¶ 14.

Plaintiff argues that this search was nonetheless inadequate for several reasons, which the Court will take in order. He first contends that the supporting declarations are deficient because

6

they do not contain the names and job titles of USAO-SDFL personnel who participated in the search. See Pl. Opp. at 2–3. The cases Pubien cites, however, suggest that the affidavits the Government offers are indeed adequate. For example, "[a]ffidavits including search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient." Piper v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 21 (D.D.C. 2003) (citing Weisberg, 745 F.2d at 1483). The Stone and Marcenaros Declarations do those things — and also name Stone and Marcenaros as the agency officials who handled the search. Nothing in the case law suggests that every government employee who participates or responds in some way to overtures relating to the search — in this case, for example, the AUSAs and the Grand Jury Clerk — must be named for the Court to vet the adequacy of Defendant's efforts.

Next, Plaintiff believes that precedents addressing similar requests to EOUSA demonstrate that the relevant information would be found not with the Court Clerk but with the USAO's Grand Jury Clerk, who could locate responsive documents using her office's computer system. See Pl. Opp. at 4–5, 9. The cases Pubien cites do suggest that, at least for some USAOs, information responsive to his request would exist in the Grand Jury Clerk's division and be easily traceable by a database search. See, e.g., Fowlkes v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 67 F. Supp. 3d 290, 298–99 (D.D.C. 2014). None of the cases he cites, however, specifically deals with the USAO in the Southern District of Florida, nor do they suggest every office is similarly organized. Even if that were so, moreover, the U.S. Attorney's Office does not assert in this case that it never had such records. Rather, it represents only that any of "the records that might have related [to Pubien's request] . . . ha[ve] been purged in accordance with the [office's] record retention schedule." Marcaneros Decl., ¶¶ 9, 13. The

Government is not required to produce documents that no longer exist or to retain indefinitely the records it has.

Plaintiff maintains, finally, that the Memo is not responsive because it contained only the beginning and ending dates for the grand jury, rather than every in-session date and, further, that the Government is not clear whether it renewed its search in response to the 2017 request, which was broader than the one from 2016. See Pl. Opp. 5–6, 8. That the Memo does not contain all the information Plaintiff requested is true, but that is because more specific records do not exist. EOUSA is clear, moreover, that it did undertake an additional, renewed search in response to Plaintiff's 2017 request. See Marcenaros Decl., ¶¶ 11–12.

B.     Exemptions 6 and 7(C)

The Court next addresses the propriety of the Government's withholdings of names in the Memo. FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Nine categories of information are exempt from FOIA's broad rules of disclosure. See 5 U.S.C. § 552(b)(1)–(9). These exemptions are to be "narrowly construed," Rose, 425 U.S. at 361, and the reviewing court must bear in mind that FOIA mandates a "strong presumption in favor of disclosure." Ray, 502 U.S. at 173; Nat'l Ass'n of Home Builders, 309 F.3d at 32. This Court, accordingly, can compel the release of any records that do not satisfy the requirements of at least one exemption. See Reporters Comm., 489 U.S. at 755.

Defendant has withheld the names in the "To" and "From" lines of the Memo pursuant to Exemptions 6 and 7(C). The latter is a broader exemption and excludes "records or information compiled for law enforcement purposes . . . to the extent that the production of such law

enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It strains credulity to suggest that the information compiled about grand-jury dates over a decade after it was impaneled and discharged — and in response to a FOIA request — was assembled for law-enforcement purposes. Indeed, the Memo was created only for FOIA purposes.

The Government, then, is left with Exemption 6. Under that exemption, an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files is construed broadly," and "[c]ourts look to the nature of the information at issue, not necessarily the nature of the files," such that withholdings can include "not just files, but also bits of personal information such as names and addresses." Judicial Watch, Inc. v. FDA, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (citation omitted); Gilman v. Dep't of Homeland Security, 32 F. Supp. 3d 1, 10 (D.D.C. 2014) (internal quotation marks and citations omitted). In assessing this exemption, a court "pursue[s] two lines of inquiry." Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1228 (D.C. Cir. 2008). First, it must determine whether the records at issue are those encompassed by Exemption 6. If so, the court must then decide whether their disclosure would "constitute a clearly unwarranted invasion of personal privacy," which requires balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information." Id. (citation omitted).

As to the first, the removal of the names protects personal information — *i.e.*, the identities of the individuals working at the district court and U.S. Attorney's Office. See, e.g., Judicial Watch, 449 F.3d at 152–53. Second, weighing their privacy interest against the public interest in disclosure nets out in favor of the former. The Government has some interest in

9

withholding the names to protect its personnel from "harassment or harm." Stone Decl., ¶ 25. Plaintiff, by contrast, has not identified any interest whatsoever in obtaining the names of the people who merely exchanged the Memo that EOUSA produced in response to his request. That ministerial task is unrelated to the information he seeks, nor does it shed any light on the material he has an interest in obtaining.

Finally, one note on Plaintiff's last objection to EOUSA's invocation of the exemptions. He maintains that he found, via a Google search, an Administrative Order regarding the grand jury's tenure. He reasons, therefore, that the redacted information is in the public domain and cannot be withheld. See Pl. Opp. at 10. This is a *non sequitur*. That some material related to this grand jury is public does not imply that the names of the staff members who exchanged the Memo are also public. His objection cannot, therefore, defeat the withholding.

### IV. Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment. A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 13, 2018